**Darrell E. NELSON, Appellant,**

v.

**Louis SULLIVAN, Secretary of Health and Human Services, Appellee.**

**No. 91–2390MN.**

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1992.

Decided June 3, 1992.

**364**

Lionel Henry Peabody, Duluth, Minn., argued, for appellant.

Michael C. Messer, Chicago, Ill., argued, (Thomas B. Heffelfinger, Robert M. Small, Donna Morros Weinstein, Richard A. Urbin and Grace M. Kim, Chicago, Ill., on the brief), for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and LOKEN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Claimant Darrell Nelson appeals from the district court's [1] order denying him supplemental security income benefits under Title XVI of the Social Security Act. Because substantial evidence on the record as a whole supports the Secretary's decision, we affirm.

## I. BACKGROUND

Darrell Nelson was forty-six years old, 5'11" and weighed approximately 300 pounds at the time of the hearing on July 26, 1989. He has a seventh grade education and has past relevant work experience as a construction worker, truck driver, landscape laborer, and ore controller. He last worked in 1978.

On August 29, 1988, Nelson filed an application for supplemental security income (SSI) under Title XVI of the Social Security Act.[2] He alleged that he had been disabled since August 31, 1979, due to arthritis.[3] His application was denied initially and on reconsideration, and an administrative hearing was held on July 26, 1989. On September 22, 1989, the ALJ found Nelson was not disabled and was capable of performing a limited range of sedentary work. Nelson filed a request for review by the Appeals Council, and the Appeals Council received and considered new evidence submitted by Nelson. On February 27, 1990, the Appeals Council concluded there was no basis upon which to grant review, denied the request, and ruled that the ALJ's decision stood as the final decision of the Secretary. Nelson then brought an action in district court alleging the ALJ's decision was not supported by substantial evidence on the record as a whole. The court referred the matter to a magistrate who recommended that the Secretary's decision be

---

1. The Honorable Donald D. Alsop, Chief United States District Judge for the District of Minnesota.

2. To be eligible for supplemental security income benefits under Title XVI of the Act, a claimant must show he was under a continuing disability while his application was pending. *See* 42 U.S.C. § 1382(c); 20 C.F.R. §§ 416.330, 416.335.

3. Nelson had previously filed an SSI application on March 11, 1987, alleging that he had been disabled by arthritis since 1958. The application was denied initially and on reconsideration and the ALJ expressly declined to reopen Nelson's prior application; as a result, Nelson must establish that his condition became disabling after March 11, 1987.

reversed and Nelson's motion for summary judgment be granted. On April 23, 1991, the district court rejected the magistrate's recommendation and affirmed the Secretary's decision denying benefits. 764 F.Supp. 1347.

At the administrative hearing, Nelson testified that he suffers from pain in his left knee, ankle, foot pain, and right shoulder pain, weakness in his right wrist, hearing loss, depression, severe headaches and sleep apnea.[4] He also testified that he can walk two blocks, stand for 15–20 minutes, sit for 15–90 minutes, lift up to 10 pounds, be on his feet for a total of four hours and sit a total of four hours. He testified he spends approximately four hours a day visiting with his parents, friends, or ex-wife; that he shops for groceries, does light housework, and watches three hours of television daily. He stated that he limits his driving to 25 miles, that he gave up arts and crafts due to memory loss, and that he has difficulty reading and understanding instructions. He stated that his sleeping disorder caused headaches, but admitted the use of a therapeutic inhaler (CPAP) and Tylenol helped control the sleep apnea.

In addition to listening to Nelson's testimony, the ALJ reviewed numerous medical reports and hospital records. Between 1973 and May 20, 1987, the date of the final decision denying Nelson's prior application, the record showed that Nelson received treatment for complaints of hearing and musculosketal problems, and that he underwent one vocational and one psychiatric assessment. His treating physicians during this period found that Nelson was restricted from performing work that involved being on his feet all day, running, climbing, or excessive bending, but that he could perform work that did not involve such activities.

On June 17, 1987, Matthew Eckman, M.D., examined Nelson, reviewed his medical history and concluded that Nelson had a tendency toward depression but did not appear to have a chronic, severe mental condition. He also recommended that Nel-

son lose weight. On July 8, 1987, Dr. P.J. Windberg, M.D., examined Nelson for complaints of sleep apnea and recommended that he lose weight and undergo a sleep study. Nelson was hospitalized for a sleep evaluation that indicated he suffered from sleep apnea, which could be controlled by the use of nasal CPAP treatment. In September of 1987, Nelson was enrolled in a weight loss program but gained weight. During the next six months he was evaluated for complaints of left foot pain, left shoulder pain, and stiffness in the neck; the reports showed mild degeneration in the joints.

In November of 1988, Edwin Luh, M.D., reviewed the medical evidence and concluded that Nelson was capable of performing significant work-related activities despite his physical and mental conditions. Owen Nelson, Ph.D., also reviewed the record and found that Nelson did not exhibit a mental impairment that was disabling. On January 19, 1989, S.K. Goff, M.D., examined Nelson and recommended a physical therapy program of exercise and conditioning, and concluded that Nelson was able to perform sedentary to light activities on a permanent basis. One week later Nelson enrolled in a physical therapy program and was released after achieving his therapy goals. In April of 1989, Nelson was examined for complaints of chest tightness and shortness of breath, and the examining physician stated the symptoms were possibly related to his obesity.

On September 22, 1989 the ALJ found that Nelson had medically determinable impairments relating to degenerative changes in his left shoulder and in the cervical and thoracic spine, degenerative arthritis of the left knee, surgeries on the left ankle, obesity, sleep apnea, a mild dysthymic disorder, and a passive/dependent personality disorder. The ALJ found, however, that Nelson did not have an impairment or combination of impairments medically equal to one defined in the Social Security regulations. One week after the ALJ rendered his decision, Dr. Windberg submitted a report stat-

---

**4.** Sleep apnea involves transient attacks of failure of the respiratory center to stimulate ade-

quate respiration during sleep. *Stedman's Medical Dictionary,* p. 97 (5th Ed.1982).

ing that Nelson had been disabled by sleep apnea from July 1987 to April 1989, and Nelson's condition was equivalent to minor motor epileptic seizures as described in Section 11.03 of the listed impairments.

## II. DISCUSSION

### A. Contents of the Record

■ Before reviewing the Secretary's decision, we must determine what role, if any, is played by the evidence of sleep apnea submitted to the Appeals Council by Dr. Windberg on September 29, 1989, one week after the ALJ rendered his decision. When new and material evidence is submitted to the Appeals Council,

> [t]he Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). The newly submitted evidence is to become part of what we will loosely describe here as the "administrative record," even though the evidence was not originally included in the ALJ's record. *Browning v. Sullivan*, 958 F.2d 817, 823 n. 4 (8th Cir.1992). If the Appeals Council does not consider the new evidence, a reviewing court may remand the case to the Appeals Council if the evidence is new

and material. *See Williams v. Sullivan*, 905 F.2d 214, 217 (8th Cir.1990). If, as here, the Appeals Council considers the new evidence but declines to review the case, we review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision.[5] *Browning*, 958 F.2d at 823.

### B. Substantial Evidence

■ Nelson argues the ALJ's decision was not supported by substantial evidence on the record. Crucial to Nelson's argument is the ALJ's failure to consider sleep apnea as a condition equivalent to a listed impairment. We must uphold the ALJ's decision if it is supported by substantial evidence on the record as a whole.[6] *McMillian v. Schweiker*, 697 F.2d 215, 220 (8th Cir.1983).

■ In reviewing the Secretary's decision, we must consider: "(1) whether, according to *Polaski v. Heckler*, [751 F.2d 943, 948 (8th Cir.1984)], the Secretary considered all of the evidence relevant to claimant's complaints of pain, and (2) whether that evidence contradicted [the claimant's] account, so that the Secretary could discount [the claimant's] testimony for lack of credibility." *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir.1987). Moreover, it is the statutory duty of the ALJ, in the first instance, to assess the credibility of the claimant and other witnesses. *Tucker v. Heckler*, 776 F.2d 793, 796 (8th Cir.1985).

---

5. We do not believe it is necessary for Nelson to submit a motion pursuant to 42 U.S.C. § 405(g) in order for this court to consider the new evidence. Section 405(g) provides, in pertinent part, that a court may "order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." We did not require a 405(g) motion in *Browning*, yet we considered evidence that was submitted to the Appeals Council after the ALJ's decision was rendered. Furthermore, once the evidence is submitted to the Appeals Council it becomes part of the record, thus it would not make sense to require Nelson to present good cause for failing to make it part of a prior proceeding's record.

6. Substantial evidence is more than a scintilla of evidence. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Under this standard, we do not reverse the Secretary even if this court, sitting as finder of fact, would have reached a contrary result; "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150–51 (8th Cir.1984).

■ We find the ALJ properly interpreted the record in finding that Nelson was not entitled to SSI benefits. Nelson had the burden of establishing that he had a medically determinable physical of mental impairment and that impairment rendered him unable to engage in any substantial gainful employment. 20 C.F.R. §§ 416.-905(a), 416.909 (1991). The ALJ found that although Nelson had a number of medical impairments, Nelson failed to meet his burden of establishing that his medical condition had deteriorated after the initial denial of benefits on March 11, 1987.

Here, as in *Browning*, the evidence submitted to the Appeals Council does not overcome the evidence supporting the ALJ's decision. *Browning*, 958 F.2d at 823 (citing *Ward v. Heckler*, 786 F.2d 844, 846 (8th Cir.1986)). The ALJ made express credibility findings, and set forth the inconsistencies that led to his denial of benefits. *See Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988). The evidence presented at the hearing indicated that Nelson's sleep apnea condition existed at least one year prior to 1987, and the medical reports indicated that use of the CPAP mask controlled the sleeping disorder. If Nelson's apnea was not controllable, it would present a different question for this court. Here, however, the record shows the apnea was controllable, and Nelson failed to avail himself of the treatment. Furthermore, numerous medical reports indicated mild degenerative changes in the knee, wrist, shoulder and foot, and minimal residual effects. Moreover, the ALJ determined that Nelson's daily activities and recreational pursuits were inconsistent with his subjective complaints of debilitating pain. Nelson stated he had chronic excruciating pain and yet took no medication other than Tylenol; Nelson was told numerous times to lose weight in order to alleviate many of his symptoms but failed to follow his doctors' instructions. Thus, Dr. Windberg's conclusory letter diagnosing Nelson as disabled did not overcome the medical evidence supporting the ALJ's decision. *See Browning*, 958 F.2d at 823. Based upon the evidence presented at the hearing and submitted to the Appeals Council, we find the ALJ's decision that Nelson is not disabled is supported by substantial evidence on the record as a whole.

Nelson also contends there was substantial evidence in the record that his sleep apnea condition met or was equivalent to section 11.03 of the listed impairments in Appendix I, 20 C.F.R. Part 404 (1991). He argues it is clear the ALJ did not consider his entire medical condition when deciding the question of medical equivalency. Furthermore, the ALJ improperly rejected Dr. Windberg's opinion as a treating physician and relied on the opinion of two doctors who did discuss apnea in their reports. We find the district court properly rejected Dr. Windberg's opinion. Decisions concerning medical equivalency are the responsibility of the Secretary and the ALJ properly relied on the opinions of two physicians designated by the Secretary who concluded that Nelson was suffering from a disorder that was not equivalent to a listed impairment. *Nelson v. Sullivan*, 764 F.Supp. 1347, 1349–50 (D.Minn.1991). We find there is substantial evidence in the record to support the Secretary's finding that sleep apnea is not equivalent to a listed impairment.

C. Remand

■ Nelson argues a change in the Social Security Regulations, which became effective August 1, 1991, requires this case be remanded to the Secretary for a new hearing. Nelson first argues remand is necessary due to the change in the regulations governing the weight to be given a treating physician's opinion. *See* 56 Fed. Reg. 36,969 (1992) (to be codified at 20 C.F.R. § 416.927). He argues the ALJ clearly did not give Dr. Windberg's opinion the weight required under the new regulations. We disagree. Prior to the enactment of the regulations, this court had held that treating physicians' opinions are generally entitled to substantial weight. *Turpin v. Bowen*, 813 F.2d 165, 170 (8th Cir. 1987). Without addressing the retroactivity of the regulations, we find a remand is unnecessary because the new regulation merely codifies this circuit's law regarding

the opinions of treating physicians, and therefore has no effect on the ALJ's decision.

Nelson also argues the case should be remanded because the issue of medical equivalence was decided under an obsolete regulatory provision, Social Security Ruling 83–19, which was rescinded August 1, 1991. Again without addressing the retroactivity of the regulations, we hold that a remand would not result in a different administrative decision because the new regulations do not change the weight accorded to a physician's opinion on the issue presented here. The ALJ reviewed the medical findings and other evidence to determine the nature and severity of Nelson's impairments to determine if he met or equalled the listing of impairments. The new regulations provide that an opinion regarding whether a medical conditions meets or equals a listed impairment is still reserved to the Secretary and that "[a]lthough we consider opinions from treating and examining sources ... the final responsibility for deciding those issues is reserved to the Secretary. We will not give any special significance to the source of the opinion on these issues." 56 Fed.Reg. 36,969 (1992) (to be codified at 20 C.F.R. § 416.927(e)(2)). Because the new regulations leave the final determination up to the Secretary, a remand is unnecessary.

## III. CONCLUSION

We conclude the Secretary's decision denying Nelson benefits is supported by substantial evidence in the record as a whole and accordingly we affirm that decision.